**CONTINENTAL ILLINOIS CORPORATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 88 C 0160.**

United States District Court, N.D. Illinois, E.D.

Dec. 13, 1989.

Edward C. Rustigan, Joel V. Williamson, Thomas C. Durham, Roger J. Jones, Mayer Brown & Platt, Chicago, Ill., for plaintiff.

Jeffrey Kaplan, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION
## AND ORDER

ASPEN, District Judge:

Plaintiff Continental Illinois Corporation ("Continental") has filed this action against the United States of America. Continental seeks the recovery of overpayment of federal income tax for the years 1969 to 1973. Currently before the Court is the United States' motion for partial summary judgment or a partial dismissal with respect to refunds claimed for the years 1969 and 1971. For the reasons given below, we grant partial summary judgment in favor of the United States.

## BACKGROUND

For the most part, the facts relevant to this motion are undisputed. Continental is a large bank holding company that conducts a significant amount of international business. During the 1960's and 1970's, Continental made loans to various entities in foreign countries. Many of these loans were structured as "net loans" or "net quoted loans." The tax consequences of these loans are at the root of the dispute between the parties.

A "net loan" or "net quoted loan" describes a particular type of transaction in which Continental loaned funds "net" of foreign taxes. In other words, Continental did not pay any taxes directly to a foreign government. Instead, the foreign borrower would assume the responsibility for paying these taxes. In this manner, Continental would be assured of receiving a specified net interest amount, regardless of foreign taxes or changes in foreign tax law.[1]

For many years, a lender which had made net loans to foreign borrowers included in income only the amount of net interest received from the borrower. The payment of taxes by the foreign borrower on behalf of the lender did not have any tax consequences. However, in 1976, Continental determined that revisions of IRS policy regarding net loans had altered the tax consequences of these transactions.[2] Instead of including only the amount of net interest received from the borrower, the revision in policy required the lender to include in income the amount of foreign withholding tax which the borrower promised to pay on behalf of the lender. However, the revision in policy also entitled the lender to foreign tax credits for foreign taxes paid on its behalf by the borrower.

After Continental became apprised of the new IRS policy, it began an exhaustive analysis of the amount of foreign withholding taxes paid on its behalf by foreign borrowers pursuant to the terms of the net quoted loans. For present purposes, a detailed description of this study is unnecessary. It is sufficient to note that Continental concluded that, for the years 1969 to 1973, it was entitled to substantial refunds due to its ability to claim the tax payments made on its behalf as foreign tax credits.

Continental submitted the study to the IRS, and it was reviewed by an International Tax Examiner ("Examiner"). Upon review of the study, various revisions were made to Continental's claims for refunds for the years 1969 to 1973. Two of these revisions are relevant to the current motion.

First, substantial revisions were made to Continental's claim for a refund for 1969. Continental originally had claimed $2,415,094 in foreign tax credits for 1969, which was the basis for a claimed tax refund of $1,139,925. However, Continental and the Examiner later determined that this amount should be adjusted. First, the figure mistakenly included foreign withholding taxes for foreign loans that were exempt from these taxes. Second, an adjustment was required to reflect a partial refund of income tax that Continental had received from the United Kingdom. These adjustments reduced the $2,415,094 tax

---

1. As Continental has noted, net quoted loans are a great deal more complex than this brief description indicates. However, this simple overview is sufficient in the context of the present motion.

2. There is a dispute as to whether the IRS changed its policy, or Continental revised its interpretation of existing IRS policy. However, this dispute does not effect the outcome of this decision.

credit total by $557,196. This adjustment to the tax credit total required a $290,838 reduction in Continental's claimed tax refund for 1969.

Revisions were also made to Continental's 1971 foreign tax credit claims. In its 1971 refund claim, Continental declared foreign tax credits of $1,673,908 and a corresponding tax refund of $870,432. The Examiner recognized the requested foreign tax credit of $1,673,908. However, the Examiner subsequently determined that Continental had failed to consider the maximum limitation on foreign tax credits, as established in 26 U.S.C. § 904(a). Because of foreign tax credits that had previously been allowed[3] as "carry backs" from 1973, the refund of $867,356[4] was disallowed. Continental agreed with this adjustment.

During this first audit of Continental's Net Loan Study, the IRS and Continental executed certain documents. Their dispute over the effect of these documents is the catalyst of this motion. First, Continental executed a Form 870, or Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment. In essence, this form listed the proposed tax refunds that had resulted from the first audit of the Net Loan Study.

Continental also signed a Form 2297, or Waiver of Statutory Notification of Claim Disallowance. Form 2297 is most easily understood in the context of the normal procedure for refund suits under the Internal Revenue Service Code. 26 U.S.C. § 6532. IRS Code § 6532 sets forth the period of limitations for refunds suits. After the receipt of a formal IRS notice of disallowance of a claim for refund, a taxpayer is given two years in which he is allowed to institute a suit or proceeding challenging the disallowance. However, rather than waiting for the IRS to send formal notice of disallowance, the taxpayer is entitled to sign a Form 2297. By executing this form, the taxpayer waives his right to formal notice of the disallowance. The taxpayer is able to challenge the disal-

lowance without receiving formal notice from the IRS. However, the two year period of limitation begins on the date the waiver is filed. 26 U.S.C. § 6532(a)(3).

On June 3, 1981, Continental executed a Form 2297 waiver. This form reflected the disallowance of a $290,838 claim for 1969 and a $867,356 claim for 1971. These disallowances represent the adjustments to the Net Loan Study which are described above; the 1969 adjustment reflecting tax exempt foreign loans and a refund received from the United Kingdom, and the 1971 adjustment reflecting the § 904 limitation on foreign tax credits.

The first audit of the Net Loan Study and the execution of Forms 870 and 2297 did not conclude the consideration of Continental's refund claim. As required by § 6405 of the Internal Revenue Code, Continental's refund claims as adjusted by the first audit were submitted for final approval to the Joint Committee on Taxation. The Joint Committee did not approve the proposed refunds. As a result, a second audit of Continental's proposed refunds claims was required.

The result of the second audit was much different from the result of the first audit. In essence, Continental's refund claims for 1969 to 1973 were denied in full and deficiencies were asserted for 1969 and 1972. Continental protested these adjustments to the IRS, but did not prevail. On April 28, 1988, Continental paid the 1969 and 1972 deficiencies that were identified in the second audit.

Continental filed this action on January 8, 1988. Continental alleges that it overpaid taxes in connection with the net quoted loans it issued during 1969 to 1973. The United States filed this motion for partial summary judgment or partial dismissal on the ground that the Form 2297 waiver executed on June 3, 1981 precludes Continental from pursuing the refunds listed in this form. Continental concedes that the Unit-

---

**3.** These foreign tax credits that had been carried back did not involve withholding taxes on net quoted loans.

**4.** Due to an error in transcription, the Examiner allowed $3,076 of the refund claim, when the entire claim should have been disallowed.

ed States is entitled to partial summary in the amount of $262,997 judgment with respect to Continental's refund claim for 1969. However, Continental opposes the remainder of the motion.

## STANDARD OF REVIEW

"A motion for summary judgment should be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Checkers, Simon & Rosner v. Lurie Corp.,* 864 F.2d 1338 (7th Cir.1988) (citation omitted). The moving party bears the burden of establishing the absence of any disputed facts. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If, however, the nonmoving party bears the burden of proving an issue at trial, it also bears the burden of presenting sufficient facts on summary judgment from which a trier of fact could find in its favor, and the moving party need only "[point] out to the District Court ... that there is an absence of evidence to support the nonmoving party's case." *Id.* 106 S.Ct. at 2554; *Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir.1988). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Richardson v. Penfold,* 839 F.2d 392, 394 (7th Cir.1988).

## DISCUSSION

Despite the complicated factual background of this case, the United States' argument is rather simple. It claims that Continental is time barred from contesting the disallowance of the refunds listed in the June 3, 1981 Form 2297 waiver. According to the United States, a two year statute of limitations began to run when the waiver of notification was signed. Because Continental failed to institute any suit or challenge to these disallowances before June 3, 1983, it is precluded from seeking these refunds in this litigation.

On its face, the waiver supports the United States' position. The waiver states:

I, Continental Illinois Corporation (formerly Conill Corporation) of 232 South LaSalle Street, Chicago, Illinois, 60693, waive the requirement under Section 6532(a)(1) of the Internal Revenue Code that a notice of claim disallowance be sent to me by certified or registered mail for the claims for credit or refund shown below in column (d), below.

I understand that the filing of this waiver is irrevocable and it will begin the 2–year period for filing suit for refund of the claims disallowed as if the notice of disallowance had been sent by certified or registered mail.

(App. to Def. Mem in Support of Mtn.) The form was signed on behalf of Continental by J. Joseph Anderson, Senior Vice President and Controller.

Despite the straightforward nature of the waiver, Continental claims that it should not be bound by the two year statute of limitations. It offers two arguments in support of this contention. First, Continental claims that the Form 2297 was never validly executed. Second, it asserts that even if there had been a valid execution of the Form 2297, the subsequent audit and disallowances by the IRS resulted in a revocation of Form 2297. As explained below, we find that these arguments are without merit and that Continental is bound by the waiver.

### A. Execution of the Waiver

Continental argues that it should not be bound by the waiver because it was not validly executed. It rests this argument on its interpretation of the Internal Revenue Manual–Audit ("Manual"). Specifically, Continental cites a provision of the Manual which states that the Form 2297 waiver should not be solicited in cases that are subject to Joint Committee Review. I.R.M. § 4576(1)(7). Because the IRS instructs its agents not to solicit Form 2297 waivers in this type of case, Continental argues that the solicitation of the waiver by the Examiner precluded valid execution. In other words, the waiver was not validly executed because its solicitation was not authorized by the IRS Audit Manual.

Continental's argument rests on the assumption that the edicts of the Manual are binding on the IRS. In some cases, regulations promulgated by administrative agencies may have the force of law. *See e.g. Water Quality Ass'n v. United States*, 795 F.2d 1303, 1305 (7th Cir.1986). However, not all administrative regulations and rules have this binding effect. *Id.* Courts have held that the Internal Revenue Manual, which is not codified in the Code of Federal Regulations, is not mandatory and does not have the binding force and effect of law. *United States v. Horne*, 714 F.2d 206, 207 (1st Cir.1983) (citations omitted); *United States v. Will*, 671 F.2d 963, 967 (6th Cir. 1982) (citations omitted).

■ We agree with those courts that have held that the provisions of the Internal Revenue Manual do not have the force and effect of law. The Manual is adopted purely for the internal administration of the IRS. Its purpose is not to confer rights on private citizens, but to govern the internal affairs of the IRS.

Continental emphasizes the wisdom of prohibiting the use of Form 2297 in cases which are to be submitted to the Joint Committee for approval. However, this argument is not relevant to the issue of whether the waiver was validly executed. While the IRS may not have acted in accordance with its standard internal procedures in this case, there is no suggestion that the execution of the waiver in these circumstances violated a statute or law binding the IRS or any legal right guaranteed to Continental. Accordingly, we reject Continental's argument that the waiver was not validly executed.

### B. Revocation of the Waiver

Despite the fact that the waiver explicitly states that it is irrevocable, Continental argues that the subsequent actions of the IRS constituted a revocation of Form 2297 waiver. The legal foundation for this argument is a series of cases in which courts have held that a waiver made upon a mistake of fact may be revoked. However, we need not reach this issue, since there is no factual basis for us to conclude that the waiver in this case was made upon a mistake of fact.

■ Continental maintains that it only executed the Form 2297 waiver because it was operating under the mistaken factual assumption that the tax liability identified during the first audit would not be altered during subsequent IRS review. In other words, Continental claims that it would not have signed the waiver had it known that its refund would be diminished during the second audit. However, Continental has produced no facts that support the contention that it was operating under this assumption.

On the contrary, Continental concedes that it was aware that subsequent review might change the results of the first audit. Although Continental claims that the Form 870 described final refund determinations, it also acknowledges that it is "well established that a Form 870 is not binding on the IRS." (Pltf. Mem at p. 17). Furthermore, Continental also acknowledges that, "both parties to the agreement were aware that the results of the first audit were subject to approval by the Joint Committee and could ultimately be very different." (Pltf. Mem. at p. 19). Given these statements to the contrary, we cannot find that Continental was handicapped by a mistake of fact when it signed the waiver because Continental was aware of the fact that the results of the first audit were subject to review by the Joint Committee.[5]

Continental also suggests that the facts embodied in the Form 2297 waiver were changed during subsequent IRS review of it's tax claims. However, the facts related to the disallowances referenced in the waiver were not changed after the waiver was signed. The IRS disallowed the claims for specific factual reasons. The 1969 claim was disallowed because it was based on tax exempt loans and a loan for which Continental had received an income tax refund.

---

**5.** Continental certainly had notice that the results of the first audit were subject to review prior to June 3, 1983; the date on which the two year period of limitations expired. It received a "Notice of Proposed Adjustment" in May, 1982 that disallowed its entire refund claim.

The 1971 claim was disallowed because Continental had exceeded its foreign tax credit limitation for this year. Subsequent review of Continental's tax claims did not uncover facts to suggest that these disallowances were erroneous. On the contrary, subsequent review confirmed these disallowances, and disallowed an additional portion of the refund claim. Accordingly, we reject Continental's argument that the waiver should be revoked because the facts changed during later audits.

### CONCLUSION

For the reasons stated above, we grant the United States' motion for partial summary judgment with respect to Continental's 1969 claim for $290,838 and 1971 claim for $867,356. It so ordered.